BEEMAN *versus* LAWTON.

A mortgage of personal property, to be valid against others than the parties to it, must be recorded, or the possession of the property *taken and retained* by the mortgagee.

A *like possession* is necessary to constitute a pawn or pledge.

A mere *executory* agreement with defendant, in relation to personal property remaining in possession of the owner, confers on him no right of property or of possession.

And instructions upon a matter which cannot affect the party excepting, are immaterial.

ON EXCEPTIONS from *Nisi Prius*, RICE, J., presiding.

Trover, for the conversion of a Piano Forte.

Both parties claimed under one Bartlett, who mortgaged it to defendant, in Feb. 1851, which mortgage was recorded, and some months after, (Nov. 4, 1851,) gave a bill of sale of it to plaintiff, but he could prove no delivery or possession.

The plaintiff introduced evidence tending to show, that the mortgage was made with the design of defeating the creditors of Bartlett.

The defendant proved by his partner in business, (after a release by him of all his interest in the piano,) that in May, 1851, Bartlett wished him to become surety for him on a poor debtor's bond. He declined. Bartlett then said to defendant, "you have that piano, if you will sign the bond, and I dont hold you harmless, you take the piano and sell it or keep it, as you see fit." The defendant and his partner signed the bond.

In the succeeding fall the defendant took the piano into his possession.

In the spring of 1853, the witness paid the execution upon which the bond was given, out of the partnership funds, amounting to one hundred and forty dollars.

The Judge instructed the jury that if Bartlett authorized the defendant to sell or keep the piano, in consideration that his partner would sign the bond, then the release of said witness to defendant, discharged the defendant's claim.

The verdict was for plaintiff, and defendant excepted.

*Paine & Clay*, for defendant.

*Danforth & Woods*, for plaintiff.

Appleton, J. — It appears that on February 27, 1851, one Bartlett, from whom both parties derive title, executed a mortgage of the piano in dispute, to the defendant, who in the fall following took the same into his possession. The plaintiff's bill of sale was dated November 4, 1851. As between these opposing titles, that of the defendant was prior and possession was acquired under it, but it was resisted on the ground that it was fraudulent. No exceptions having

been taken to the instructions on this branch of the case, they must be deemed correct. Indeed it was conceded that the instructions given did not apply to the written mortgage, so that the question to be considered is whether they are erroneous in reference to the subject matter to which they were specially applicable. The verdict of the jury, which was for the plaintiff, tends to establish the fact that the written mortgage was fraudulent or invalid for some other cause, as unless such had been the case, the defendant, being in possession under a title prior to the plaintiff, must necessarily have been entitled to a verdict.

It appears that in May, 1851, Bartlett called on S. W. Lawton, a witness in the case, with his brother, the defendant. Bartlett wished the witness to execute as surety for him a poor debtor's bond, which he declined. He then turned to the defendant and said "you have the piano, and if you will sign the bond and I don't hold you harmless, you take the piano and sell it or keep it, as you see fit." The witness signed the bond. Last spring the witness paid the execution upon which the bond was taken, out of the joint funds of the defendant and himself, they being partners. The amount paid was one hundred and forty dollars. It is in reference to this transaction that the instructions complained of were given.

It is to be observed, that at this time the defendant was not in possession, so that the conversation related to a piano of which he neither had possession, nor (the mortgage being for some cause void,) the right to possession. The defendant claimed that this transaction constituted a mortgage, but such was not its character. By R. S., c. 125, § 32, no mortgage "shall be valid against any other persons than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee; or unless the mortgage has been or shall be recorded by the clerk of the town where the mortgager resides." A delivery of personal property for security, is not a transfer on condition, and does not constitute a mortgage thereof, but

a pledge merely. *Eastman* v. *Avery*, 23 Maine, 248. So
that even if the piano had been delivered for the purposes
of security, the defendant could not have held the property
as mortgagee. Much more will it not constitute a mortgage,
when the property is neither present nor delivered.

The defendant shows no right to retain the property as a
pawn or pledge. To constitute a pawn or pledge, there
must be a delivery and retention of the possession of the
thing pawned. If the pawnee give up the possession to the
pawner, his rights are gone. The element of possession
failing, there can be no pawn nor pledge. Story on Bail-
ments, § 300; *Haven* v. *Law*, 2 N. H. 16; *Bonsey* v. *Amee,*
8 Pick. 236. It can at most be viewed only as a mere ex-
ecutory agreement, conferring no rights of possession or
property over the thing to which it related.

The witness Lawton, was neither mortgagee, pawnee nor
vendee, and could confer no right on the defendant to re-
tain possession, nor would his release be of any avail. As
by the transaction of May, no rights were acquired by the
defendant or the witness, and as the instructions related
thereto, they must be regarded as immaterial.

*Exceptions overruled.*

SHEPLEY, C. J., and TENNEY and CUTTING, J. J., concurred.